Next case is 512-0166, People v. Scott Moore. Mr. O'Neill. May it please the Court, Counselor. My name is Lawrence O'Neill and I represent Scott Moore in this case. This is a direct appeal following Mr. Moore's conviction for first degree murder by a jury following the shooting death of Catherine Fowler, which occurred at Fowler's apartment. The cause of death was blunt trauma to the head. In a video recording of Mr. Moore's post-arrest interrogation that was played at trial, Mr. Moore stated that he hit Fowler with a baseball bat in self-defense after she had attacked him with the bat. The Court gave instructions that it justified the use of force in second degree murder for the unreasonable belief that he was justified in using force. A key part of the State's case was the presentation of two surveillance video recordings produced by the apartment's surveillance camera. One recording depicted the night before the incident where the subject entered the apartment building, looked around, walked up to Fowler's apartment, and then left the building. The second recording was of the next morning where the subject entered the apartment building and was given entrance to Fowler's apartment. And then the subject then left the apartment shortly thereafter with a baseball bat and a grocery bag. In argument one, Mr. Moore challenged the admissibility of the surveillance videos because the State failed to lay a proper foundation to establish the accurate and reliable representations of the scene in the Court's pit. Of course, a lot of this argument is somewhat of an overlap with the previous Boyd argument. Basically, the visual recordings are admissible as substantive evidence only when a witness with personal knowledge of the recorded scene testifies that the recording is an accurate representation of what the recording purports to depict. However, here there was no witness with personal knowledge to identify the State's visual exhibits of the surveillance camera as accurate representations of what they saw. There was no witness somewhat like Christopher Adams in the other case, who did not, of course, properly authenticate the recordings. But there's no witness here who testified that the surveillance video were an accurate representation of what they saw. What about waiver? Yes, Your Honor. I'm asking this Court to consider the matter as plain error under the closely balanced evidence prong that Mr. Moore would have to establish that prejudice occurred by the result of the emission of these surveillance videos. I submit to the Court that the evidence was closely balanced in order to consider this as plain error. First of all, during a three-hour interrogation, Mr. Moore stated that he went to the apartment the night before the incident to fix Captain Fowler's cable system. Then he went back the next morning to get a drink of water and use the bathroom. He was out riding his bicycle. They were friends, Fowler and Moore were friends. And Moore testified that Fowler was angry more about some previous drug deal and that Fowler hit him with the bat. He took it out of her hand and hit her again, hit her, causing her death. There was insufficient evidence to contradict Mr. Moore's claim that he acted in self-defense. There's no evidence of what actually occurred within that apartment building. Therefore, the evidence of the surveillance camera that shows Mr. Moore in a very suspicious looking manner the night before, not that it shows the subject, not Mr. Moore, in the apartment building the night before, looking very suspicious, with his hood up, perhaps with a mask and gloves on, is very, very incriminating. And it cannot be said that that evidence from the surveillance cameras did not contribute to the jury verdict. Moreover, the court gave, like I mentioned, instructions on second-degree murder and justified use of force, which indicates that there was some evidence to support the court giving those instructions. Considering those factors, then, the evidence should be considered as plain error under the closely balanced prong of the plain error doctrine. But wasn't the defendant's statement just cumulative of what the video showed? I mean, he admitted to being there, right? He admitted to going back the next morning. During the course of the interrogation, he was shown a surveillance video from the morning of the incident. He was not shown the video of the night before. No, but my question was, he gave a statement, his statement tracked with the surveillance tape, so wasn't his statement merely cumulative of what the video was showing? Your Honor, he didn't identify the video in court. He did not say that that is the video with the mask, with the gloves, and the baseball cap. That's what you're worried about. Correct. That's very incriminating. Because he said he went, and so if he just showed somebody coming and going, there wouldn't be any problem. Exactly. Because he's dressed up like someone was. That's obviously a problem. Correct. And that is totally inconsistent. A suspicious-looking subject casing the place the night before is totally inconsistent with his claim of self-defense. But we know he left the bat, I'm sorry, because somebody identified him with the bat, right? That's the next morning. The next day, he saw, someone saw the defendant riding a bicycle carrying a baseball bat. Another one saw the defendant rummaging through a purse, counting money, placing the purse in a save-a-lot bag and throwing it in the dumpster. The purse was retrieved, it was the victim's, that's how they discovered the body, all the blood matched him. Well, in his interrogation, he did... Is that a closely balanced case? He stated in his interrogation that he took the bat with him and her purse.  Did he take the money? Yes, it was in the purse, yes, Your Honor. But again, we've got a narrow... And didn't they retrieve from the dumpster the blue hooded sweatshirt that was seen in the video? Yes, yes, Your Honor, they did. But there's still no evidence, I mean, still the problem is him looking suspicious the night before with the mask and gloves and his hood up in that position and casing the joint. And he never testified that that was true, that was an accurate representation of what occurred. But the guy in the video was wearing a hooded sweatshirt and sweatpants, same color hooded sweatshirt and sweatpants that were found in the dumpster that had the victim's DNA on it. Correct. There's no admission or evidence that Mr. Moore was wearing a mask and had gloves the night before the incident. The only evidence that that comes from is from the surveillance video camera from the night before. Now that evidence is extremely prejudicial because, again, it completely contradicts his claim that he went there the night before to fix her cable television. And contradicts his claim that he acted in self-defense when he took the bat from Fowler and hit her the next day because it shows that he was, you know, very... But isn't that what we consider when we consider what's a closely balanced case? Well... I mean, if all these things are ludicrously observed, that there just happened to be somebody else the night before that had exactly the same outfit on, we're not supposed to consider that? Well, as far as... Well, when you consider the balance of the evidence, but not as far as considering the admissibility of that... Well, let me back up on that, Your Honor. Again, the only evidence that he went to that apartment the night before with criminal intent, or with not innocent intent like he said in the interrogation when he went there, is that video of him with the mask on. Now, that evidence... There was nothing... Even that evidence, that he was... He had gloves and a mask on, does not contradict what happened during the alleged incident the next morning. And so there's nothing to contradict that claim of self-defense irrespective of what the videos show the night before. Okay. In the closely balanced prong of plain error, I hear your defense of self-defense. I hear your remarks on self-defense. Do you think the court should consider the number of times this woman's head was bludgeoned? Well, it's in the... I mean, it's an incredible number of times. Well, it's in the record, Your Honor. But Mr. Moore explained in the interrogation video that he only... That Fowler kept coming after him, that he couldn't subdue her. So he hit her with the bat as many times as it took her to be subdued. That's what the record shows. Thank you. Thank you. Your Honors, counsel, the defendant admits that he did not raise the issue below, and he asks his court to look at the issue under plain error. He fails on all prongs. He doesn't show prejudice. He doesn't show that the evidence was closely balanced, and neither does he show any error in the admission of the videotapes. First off, the evidence was not closely balanced. In addition to all of the evidence surrounding the crime, as being seen with the bat and the purse and counting the money and disposing of it, it was the victim's body that refuted his claim of self-defense because she was bludgeoned while she was lying prone on a couch, a 5'4 woman. She had multiple fractures to her hands, her wrists, her fingers, torn flesh due to blunt force, forearms, elbows, her breasts, her nose, her eyes, her temple, her mouth, and her skull. She was beaten so severely that her brain had eviscerated. This refutes the defendant's claim of self-defense that he only hit her three times. In addition, the evidence that was presented via videotape was merely cumulative of the defendant's own video-recorded statement that was introduced into evidence as People's Exhibit 21 during trial. The defendant in that had been shown the surveillance tape of the morning of the 27th, which is People's Exhibit 25. As far as I know, he was not shown People's Exhibit 26, which was the surveillance videotape of the evening before on the 26th. But he did identify, I'm sorry, I shouldn't use the word identify, he admitted that he was the person depicted in People's Exhibit 25 of the morning of the murder. And he admitted that he had gone in, and he admitted he had come out, as shown with the bat and the victim's purse. So the evidence is not closely balanced. I want to switch you to just a different topic, if I could, before we run out of time. The brief seemed to indicate that the original minimus and the amended minimus reflect the defendant was convicted and sentenced on three counts of murder. Are you asking this court to correct the minimus? Yes. What are you asking the court to do? I'm sorry to interrupt, but I just don't want to run out of time. This court should correct the minimus to show that the defendant was convicted of count one intentional murder, which is the most severe. Would we be correcting the amended? Is that what you're seeking us to correct? This court can correct the minimus to reflect that the defendant was only convicted, should only have one conviction, count one intentional murder. This court has the authority to do that without ordering remand. Thank you. So it wasn't that the evidence was not closely balanced, neither can he show any prejudice, because neither video shows what occurred inside of the apartment. It only shows, in corroboration of his own statement, that he'd gone there on the evening before, and that he'd gone there that morning and had gone in and had emerged with the bat and the purse. That's all it shows. It does show a little bit more. He was dressed up like a burglar. Not the night before. But the point is he does identify the shoes that he had on the morning of the murder, and he says, those are the ones that you have in the locker. But just a visual comparison shows that he's dressed not with a mask, but in basically the same clothing on the 26th. So, I mean, those are reasons why he doesn't show any prejudice from the admission of these videos. Now, I can't remember, was there evidence that corresponded with the time that the video took place on the night before, with when he claimed he had visited her to fix her cable on the night before? The video surveillance shows that he comes in around 8.38 p.m. on the 26th. And what does he say? I don't know that he gave a time, but he said he had gone there on the evening of the 26th. So, you know, I don't know that time is that important, just his admission that he'd gone there the night before. Yeah, but he said he went in and fixed her cable, right? No, no, he did not go in. He didn't? No, no, no, he had gone there. He claimed to go fix her cable, but he did not go in. That he wasn't there? No, his statement says that he went there. But he doesn't say why he didn't go in. Well, we know what the video shows. Well, I'm assuming there was no answer at the door. I don't know that he said, but no, he did not go in. And his statement tracks that as well. But on the third, you know, it wasn't close to balance. He doesn't show any prejudice. Neither can he show that the videos themselves were, that it was an abuse of discretion to admit the videos. First off, you know, the foundation in Taylor is not exhaustive, and neither does the state have to meet all of the items that this court should consider. And the important thing is that the videotapes should be shown to be accurate and reliable. It was shown to be accurate and reliable in that the defendant himself admits he's the person depicted, and it tracks his own statement. In one of the videos. Well, yeah, I suppose the more incriminating one, it shows him coming out with the bat and the purse. Yeah, but he has an explanation for that. I mean, in my mind, maybe the more incriminating one is one that depicts him dressed up like he has some real evil mal intent with a mask on. Yeah, that's something for the jury to consider. But he nonetheless, that goes to there being no prejudice, because he does admit in his statement that he went there that night. But not dressed as some evil doer. I mean, you wouldn't have any reason to dress in a mask if you weren't a child in a Halloween costume, presumably, to visit a friend to fix her cable. You have to concede that. I mean, that's not just cumulative. Well, it is a little more than cumulative, but nonetheless, he does admit that he's the person depicted in the video on the morning of the 27th. And a jury could look at the comparison of the person depicted on the one before. I'm sorry that he showed up dressed in a mask. That's his problem. The jury is recognizing him by his clothing and the light tennis shoes and the same clothing that he wears the next morning when he shows up. So a jury could identify, and he has somewhat authenticated that earlier, the 26th video by admitting that he was the person depicted. So the comparison, the jury could identify them as the same. I'm sorry he showed up in a mask, but that's what he did. Anyway, the videos were authenticated by the defendant's video recording statement in that, one, he identifies himself as, I mean, he admits he's the person depicted in the one on the 27th, and his statement admits that he did come to the apartment the evening before and that the shoes that he has on are the ones that are in the police locker. For all those reasons, we ask this court to affirm, except for amending the evidence. Thank you. Rebuttal. Your Honors, Mr. Moore's interrogation video did not authenticate the videos either the night before or from the morning after. He did not testify that the state's exhibits that were prelated trial accurately represent the scene. He did not testify to that. He did not testify that that was him in the video from the night before. He never testified that. He did not authenticate those videos. Mr. O'Neill, let's assume, just hypothetically, that you're correct, that those videotapes should never have been admitted. Do you believe that merely the fact that those videotapes were admitted, in light of all the other evidence, require reversal? Your Honor, I cannot find that the error is harmless. Why? Because the evidence from those videos contradict the core of Mr. Moore's self-defense claim. And undermine, well, there's no testimony about what occurred in the apartment. And he testified that he did not go there the night before with an evil intent. So the videos showing him, again, with his face covered, gloves on, looking suspicious, walking up and down, is inconsistent with his claim that he went there the night before to fix her cable TV. And that he did not have a criminal intent when he went there the next morning. Assuming the videos are not admitted, you still have independent people. Nothing was obtained by the fruit of the poisonous tree, so to speak. You had independent people saying they saw him with a bat the next day. Independent people saying they saw him with a purse. He was going through the purse. They found his clothes. That's how they found, the police found, the victim. So if we excluded the video, assumed you were right, I don't see where the prejudice is. Because those witnesses who saw him with a bat riding on his bike, who found his clothes, that evidence has nothing to do with the claim of self-defense about what actually occurred in the room, in the apartment. If the witness is seeing him with a bat riding down the street, who found his clothes in the dumpster, that could have occurred even if Mr. Moore acted in self-defense. That doesn't contradict the fact that he's riding down the street with a bat and his clothes, he dumped his clothes because they had blood on them, which he admitted. The blood on his clothes during the incident. Those facts do not contradict his claim that he did, he admitted he hit him with a bat, but he did not. Certainly the pictures of her head and the brain fusing from her skull. That again, that's not inconsistent. Not inconsistent with self-defense. No, Your Honor, it's not. I mean, we cannot. I'm listening. But when you're considering whether it was harmless or not, we cannot say that those videos did not contribute to the jury verdict because they showed him the night before with very evil intent, and it's consistent with his self-defense claim. So that went to the heart of his self-defense claim. And Your Honor should also consider that the judge gave these instructions for second-degree murder and a justified use of force. Now, there had to be some evidence for the judge to give those instructions. Therefore, there is some evidence in support of Mr. Moore's claim of self-defense, and it cannot be said that the surveillance videos did not affect the jury verdict.  And I'd like to mention that the foundation here under the sign-of-witness theory, if it was to be admitted under the sign-of-witness theory, was totally lacking. There was no evidence about the installation, whether it was tested properly, or whether it was maintained, and so on and so forth, or the chain of custody. Now, consider this. If the foundation isn't established to admit this state, when there's no witness to say that it accurately represents what I saw, the risk of modification, fabrication, as Supreme Court Taylor says, is great. So there has to be a foundation. Now, if we look at the practical, what could that mean practically? Well, if the system wasn't working properly, if it did not produce an accurate image of those surveillance videos, perhaps the mask was modified, was altered. But couldn't you, on that same basis, though, couldn't you say he authenticated the second tape? No, Your Honor, because he did not identify the state's exhibit. He did not identify the exhibit at trial, and say that that is an accurate representation of the scene. He tested. He did, on his interrogation, he said, I was shown the surveillance video of the day of the incident, and that's me. But that's not a proper authentication for the admissibility of that. I guess he didn't identify that the exhibit that was played at trial was the same video that he viewed during the interrogation. Thank you. Thank you. Thank you, Your Honor. Thank you for taking the matter under advisement.